IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **HOVIG RALPH VARTAN, TRUSTEE OF THE HARRISPENN TRUST, a Pennsylvania Trust,** Plaintiff | : : : : : | **CIVIL NO. 1:11-CV-1225** |
| **v.** | : : | |
| **WELLS FARGO BANK NORTHWEST, N.A., a National Banking Association,** Defendant and Third-Party Plaintiff | : : : : : : : | |
| **v.** | : : | **Judge Sylvia H. Rambo** |
| **PENDLETON HARRISBURG SPE LLC; SPCK HARRISBURG SPE LLC; WF TWO LLC; and CAMDEN INTERSTATE DRIVE LLC,** Third-Party Defendants | : : : : : : : : | |

# M E M O R A N D U M

Presently before the court is Defendant/Third Party-Plaintiff Wells Fargo Bank, N.A.'s Motion to Dismiss Third-Party Defendants' Amended Counterclaims. (Doc. 39.) The motion has been briefed and is ripe for disposition. For the following reasons, the court will deny the motion.

I.        **Background**

  A. **Parties**

    Plaintiff, Hovig Ralph Vartan, Trustee of Harrispenn Trust, brought this action against Wells Fargo Bank, N.A. ("Wells Fargo" or "Defendant"), a national banking association.  (Doc. 1, Ex. D, Compl. ¶¶ 1, 3.)  Third-Party Defendants, Pendleton Harrisburg SPE LLC, SPCK Harrisburg SPE LLC, WF Two LLC, and Camden Interstate Drive LLC (collectively "Pendleton" or "Third-Party Defendants") are limited liability companies organized under the laws of Delaware. (Doc. 15, Third-Party Compl. ¶¶ 5-8.)

  B. **Facts**[1]

    The underlying conflict in this case stems from Pendleton's purchase of property from Plaintiff at 2575 Interstate Drive, Harrisburg, Pennsylvania (the "Property").  Following the sale of the Property, disputes arose between Pendleton and Plaintiff involving, *inter alia*, the Property's heating, ventilation and air conditioning. ("HVAC").  (Doc. 33, Amended Answer to Third-Party Complaint and Counterclaim, ¶ 64.)  To resolve these problems, Plaintiff, Pendleton, and Wells Fargo entered into a New Facilites Escrow and Servicing Agreement ("Escrow Agreement") whereby escrowed funds were to be used for certain HVAC construction, repairs, and maintenance.  (*Id.* at ¶ 65.)  Under the Escrow Agreement, Wells Fargo is the Escrow Agent and Beneficiary and is tasked with making disbursements from the escrowed funds in accordance with the terms of the

---

  [1]  As explained below, courts use the same standard in ruling on a motion to dismiss a counterclaim under Federal Rule of Civil Procedure 12(b)(6) as they do for a complaint.  Thus, the court must accept as true all the allegations in the Third-Party Defendants' counterclaims and all reasonable inferences that can be drawn therefrom.  *Wawrzynski v. Heinz Co.*, 2012 U.S. Dist. LEXIS 29246, *5-6 (W.D. Pa. March 6, 2012) (citing *Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989)).

Agreement.  Wells Fargo, as Beneficiary, also had the obligation to, in good faith, approve replacement contractors and consultants.  (*Id.* at ¶ 69.)

Consistent with the terms of the Escrow Agreement, Wells Fargo received approximately $2,840,000.00 which was paid "to provide assets to pay for New Facilities, Tank Work, . . . and other expenses on [the property at 2575 Interstate Drive]."  (Doc. 1, Ex. D (Escrow Agreement).)  Subsequently, Pendleton entered into a series of contracts with Enginuity LLC ("Enginuity"), a local HVAC contractor.  (Doc. 33 at ¶ 70.)  During the course of performance of those contracts, Enginuity issued invoices to Pendleton.  (*Id.* at ¶ 71.)  Pendleton, in turn, submitted the invoices to Wells Fargo for payment pursuant to the terms of the Escrow Agreement. (*Id.* at ¶ 72.)  However, as time went on, Pendleton learned of possible design and construction defects in the HVAC work by Enginuity.  (*Id.* at ¶ 74.)  Thus, Pendleton did not immediately submit Enginuity's invoices to Wells Fargo for payment from escrow.  (*Id.* at ¶ 75.)  Enginuity, in turn, ceased all work on the Property, leaving the HVAC work incomplete.  (*Id.* at ¶ 76.)  Enginuity has since filed suit in the Court of Common Pleas of Dauphin County (docket number 2010-CV-9448-CV) seeking $258,798.80 allegedly owed in unpaid invoices. (*Id.* at ¶ 77 and Ex. A, Dauphin Cnty. Compl.)

After Enginuity ceased working on the HVAC at the Property, Pendleton retained other engineers and contractors, including Highland Associates ("Highland"), McClure Service Company ("McClure") and Emcor Services/Fluidics, Inc. ("Emcor") to complete Enginuity's obligations.  (*Id.* at ¶ 79.)  Pendleton claims that its intention to seek replacement contractors and consultants was communicated to Wells Fargo, however, notwithstanding Wells Fargo's previous approval of

contractors other than Enginuity, Wells Fargo refused to entertain any further requests for payments from escrow, apparently because of threats of possible litigation with Plaintiff regarding the propriety of certain disbursements from the escrow account, threats which were realized in the case *sub judice*.  (*Id.* at ¶¶ 83-84.)  On December 7, 2011, Pendleton nevertheless submitted to Wells Fargo invoices totaling $211,437.44.  (*Id.* at ¶ 85.)  Those invoices have not been paid.  (*Id.* at ¶ 87.)

In short, two separate lawsuits are currently pending relating to the new facilities work at the property.  First, Enginuity sued Pendleton in Dauphin County Court of Common Pleas seeking $258,798.80 in unpaid invoices.  Second, in the case at bar, Plaintiff sued Wells Fargo claiming Wells Fargo made payments that fall outside the scope of the escrow agreement and has therefore violated its obligations to Plaintiff.  As a result of this suit, Wells Fargo ceased  approving payments from escrow of any invoices submitted by Pendleton, resulting in the instant counterclaims.

## C.   Procedural History

On May 27, 2011, Plaintiff filed a complaint against Wells Fargo in the Court of Common Pleas in Dauphin County, Pennsylvania, asserting breach of contract (Count I), negligence (Count II), and fiduciary breach (Count III) arising out of Wells Fargo's disbursements from the escrow account.  (Doc. 1, Ex. D, Compl.)  On June 29, 2011, Wells Fargo removed the action to this court.  (Doc. 1.)  On August 22, 2011, Wells Fargo answered Plaintiff's complaint, denying the allegations set forth therein and asserting several affirmative defenses, including Plaintiff's failure to include all parties to the Escrow Agreement as parties to the case.  (Doc. 11.)  On August 31, 2011, Wells Fargo filed a third-party complaint

bringing Pendleton into this lawsuit as a Third-Party Defendant under Federal Rule of Civil Procedure 14.  (Doc. 15.)  In the third-party complaint, Wells Fargo brought claims for contribution against Pendleton for negligence (Count I), negligent misrepresentation (Count II), and breach of duty (Count III), as well as an indemnification claim against Pendleton (Count IV).  (*Id.*)

On October 19, 2011, Pendleton answered Wells Fargo's third-party complaint and counterclaimed for declaratory relief and breach of contract relating to the Escrow Agreement.  (Doc. 21.)  On December 7, 2011, Wells Fargo filed a motion to dismiss Pendleton's counterclaims.  (Doc. 27.)  Plaintiff also filed a motion to dismiss the counterclaims on that same day.  (Doc. 29.)  On December 21, 2011, Pendleton filed an amended answer and counterclaims.  (Doc. 33.)  On January 27, 2012, Wells Fargo re-filed a motion to dismiss the amended counterclaims and brief in support.[2]  (Docs. 39 & 40.)  Pendleton filed a brief in opposition on February 10, 2012 (Doc. 44) to which Wells Fargo replied on February 27, 2012 (Doc. 45). Thus, Wells Fargo's motion is ripe for disposition.

## II.        Legal Standard

Courts use the same standard in ruling on a motion to dismiss a counterclaim as they do a motion to dismiss a complaint where dismissal is sought under Federal Rule of Civil Procedure 12(b)(6).  *See Wawrzynski v. Heinz Co.*, 2012 U.S. Dist. LEXIS 29246, *5-6 (W.D. Pa. March 6, 2012).  In light of this legal

---

[2]     Rather than re-filing a motion to dismiss, Plaintiff answered the counterclaim on January 27, 2012.  (Doc. 41.)  Thus, Plaintiff's previous motion to dismiss (Doc. 29) will be deemed moot.  The court will also deem Wells Fargo's original motion to dismiss (Doc. 27) moot in light of the filing of the motion to dismiss the amended counterclaims (Doc. 39).

standard, the court "must accept as true all the allegations in the [counterclaims] and all reasonable interferences that can be drawn from them, and view them in the light most favorable to the non-moving party." *Id.* (citing *Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989)).  The counterclaims must do more than allege the claimant's entitlement to relief; it must "show such an entitlement with its facts." *Fowler*, 578 F.3d at 211 (citations omitted).  As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the [counterclaimant] has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Iqbal*, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a) (alterations in original)).  In other words, a claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.*

   "To decide a motion to dismiss, courts generally consider only the allegations contained in the [counterclaim], exhibits attached to the [counterclaim] and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted); *see also Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007); *Liberty Ins. Corp. v. Alicia Keck,* 2011 U.S. Dist. LEXIS 93503, *7 (E.D. Pa. Aug. 22, 2011).  The court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the [counterclaims] are based on the [attached] document[s]." *Pension Benefit*, 998 F.2d at 1196.  Additionally, "documents whose contents are

alleged in the [counterclaim] and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (citation omitted); *see also U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) ("Although a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the [counterclaim] may be considered without converting the motion to dismiss into one for summary judgment.") (internal quotation omitted).  However, the court may not rely on other parts of the record in making its decision.  *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

## III.      Discussion

Defendant claims that both the breach of contract and declaratory judgment counterclaims should be dismissed because they fail to sufficiently state plausible claims and because they are premature or otherwise premised on speculative facts.  The court will address each argument in turn.

### A.      Breach of Contract Claim

Defendant argues that Third-Party Defendants failed to set forth the elements for breach of contract and therefore that claim should be dismissed. Specifically, Defendant notes the amended breach of contract counterclaim consists of only two sentences incorporating prior paragraphs and a damages allegation. (Doc. 40 at 5 of 17 (referencing Doc. 33 at ¶¶ 103-05.))  Defendant argues that Third-Party Defendants have failed to identify precisely how the Escrow Agreement

was allegedly breached, precisely when it was breached, or which provisions of the contract were allegedly breached.   (Doc. 40 at 10 of 17.)  This argument fails.

Under Pennsylvania law, in order to plead a viable breach of contract claim, a claimant must allege (1) the existence of a contract including essential terms, (2) breach of a duty imposed by the contract, and (3) resultant damages.  *See, e.g., Gorski v. Smith*, 812 A.2d 683, 692 (Pa. Super. Ct. 2002); *Corestates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999).  The court must determine whether the amended counterclaim sufficiently pleads a claim for breach of contract in the context of the principals drawn from *Twombly*.  In *In re Pressure Sensitive Labelstock Antitrust Litig.*, 566 F. Supp. 2d 363 (M.D. Pa. 2008) (Vanaskie, J.), the court analyzed the *Twombly* requirements and explained:

> [T]he pleading must be considered in its entirety; the claims need not be alleged with particularity, but there must be sufficient factual averments that place [Wells Fargo] on notice of the bases for the claims; and [Pendleton's] entitlement to relief on the bases of the claim presented against [Wells Fargo] must be plausible.

*Id.* at 370.  Thus, the court will look to the entire amended counterclaim, including those paragraphs incorporated by reference,[3] to determine whether or not Third-Party Defendants state a viable claim for breach of contract.

Pendleton, in its counterclaim, asserts that Wells Fargo, as beneficiary, had an obligation to approve replacement contractors and consultants.  (Doc. 33 ¶ 68.)  Pendleton cites to the first page of the Escrow Agreement which states "[T]he Company and ENGINUITY LLC and/or any other contractor approved in writing by Beneficiary, as contractor . . ., are expected to execute and deliver two separate

---

[3]  Under the breach of contract claim, Pendleton incorporates the preceding 52 paragraphs of the answer and 48 paragraphs of counterclaim factual allegations.

contracts . . . ." (*Id.*; *see also* Doc. 1, Ex. D, Escrow Agreement, p. 1.)  Pendleton also alleges that Wells Fargo, in its capacity as Escrow Agent, had certain obligations including the obligation to make good faith payments to contractors and consultants that fall within the scope of the Escrow Agreement.  (*Id.* at ¶ 69; *see also* Doc. 1, Ex. D (Escrow Agreement) § 4.1.)  Pendleton then alleges that these duties were breached when Wells Fargo refused to approve contractors other than Enginuity and refused to remit payments from escrow totaling $211,437.44 for invoices from the replacement contractors.  (Doc. 33 ¶¶ 84, 85.)  Pendleton also alleges damages, including the $211,437.44 in unpaid contractor invoices, as well as the cost to complete and correct the HVAC work at the property, and damages caused by the delay in the completion of the HVAC such as increased construction costs.  (*Id.* at ¶ 105 (a)-(d).)

   The court in *Twombly* disavowed the creation of a "heightened" pleading standard.  *Twombly*, 127 S. Ct. at 1973, n. 14; *In re Pressure Sensitive Labelstock Antitrust Litig.*, 566 F. Supp. 2d at 370.  After reviewing the aforementioned allegations, the court finds that Pendleton has sufficiently alleged, with specific references to the Escrow Agreement, that the Agreement created a duty between Pendleton and Wells Fargo, and that Wells Fargo breached that duty resulting in damages to Pendleton.  Accordingly, the court rejects Wells Fargo's argument that Pendleton's breach of contract counterclaim should be dismissed for failure to state a claim.

   Wells Fargo next argues that the breach of contract claim should fail because the allegations associated with that claim are, at best, speculative and premature.  (Doc. 40 at 10 of 17.)  In support, Wells Fargo states that it did not

receive requests for reimbursement from Pendleton until December 7, 2011, which was (1) after Pendleton was brought into this lawsuit; (2) after Wells Fargo filed its motion to deposit the remaining escrow funds with the court; and (3) after Wells Fargo moved to dismiss Third-Party Defendants' initial counterclaims.  (*Id.*) Pendleton retorts that there is no requirement in the Escrow Agreement that contractor approval be requested or given before the contractors are hired and, further, Wells Fargo, as a course of dealing, would regularly pay substitute contractors that had not formally been approved in advance.  (Doc. 44 at 10 of 16.)

Wells Fargo does not submit any case law to support its argument that this claim is premature.[4]  The court can not precisely discern how the submission of these invoices, albeit occurring very recently, renders Pendleton's allegations premature or speculative.  Simply put, the court has already found that the allegations, when viewed in the light most favorable to Pendleton, state a counterclaim for breach of contract sufficient to withstand a motion to dismiss.  The court does not find that dismissal is warranted on the ground that the claim is speculative and premature.

## B.   Declaratory Judgment

Pendleton also counterclaims for declaratory relief against both Plaintiff and Defendant under the Pennsylvania Declaratory Judgment Act, 42 Pa. C.S.A. § 7531 (Count I) and the federal Declaratory Judgment Act, 28 U.S.C. § 2201 (Count

---

[4]   As far as the court can tell, Wells Fargo is not arguing for dismissal based on lack of ripeness, but rather is arguing that Pendleton is, in essence, making a claim for *anticipatory* breach of contract which must fail because Wells Fargo has not provided the requisite "absolute and unequivocal" refusal to pay the invoices submitted by Pendleton.  In any event, this argument goes nowhere because Pendleton does not bring a claim for anticipatory breach of contract.

II).[5]  Pendleton is requesting that the court enter a judgment in their favor, declaring
that: (1) the third year anniversary of the Escrow Agreement is no earlier than April
30, 2012; (2) the delays caused by Enginuity's actions are "Force Majeure" as
defined in the Escrow Agreement; (3) the delays caused by Defendant's refusal to
approve and pay contractors are "Force Majeure" as defined in the Escrow
Agreement; (4) Defendant is entitled to a time extension under the Escrow
Agreement, Defendant may not disburse any remaining funds in the Escrow Account
to Plaintiff until after the HVAC work is completed and Pendleton's financial
obligations to Enginuity are determined, and any additional financial obligations
Third-Party Defendants incur to Enginuity must be fairly evaluated by Defendant
and paid from escrow; (5) Defendant's refusal to consider Pendleton's requests to
approve Highland, McClure and Emcor as contractors violates the terms of the
Escrow Agreement and Highland, McClure and Emcor are approved contractors; and
(6) Defendant is obligated to process invoices of Highland, McClure and Emcor and
those invoices shall be paid from escrow.

        Defendant argues for dismissal of the declaratory judgment
counterclaim on the following three grounds.  First, Defendant notes that in order to
maintain an action for declaratory judgment, "a plaintiff must establish an interest
which must be a direct, substantial and present interest, as contrasted with a remote
and speculative interest."  (Doc. 40 at 12 of 17) (quoting *New Century Bank v. Open
Solutions, Inc.*, 2011 WL 780773, at *7 (E.D. Pa. Mar. 7, 2011)).  Defendant claims
that Pendleton's declaratory judgment counterclaim is, on its face, remote and

---

[5]  The court need not determine at this point which Act applies because both Acts allow a
court to declare the rights of parties in the case of an actual controversy.  *See Everett Cash Mutual Ins.
Co. v. Ins. Corp. of Hanover*, 2008 U.S. Dist. LEXIS 76815, *10, n.7 (M.D. Pa. Sept. 30, 2008).

speculative.  Second, Defendant argues that the counterclaims should be dismissed because to find otherwise would "create duplicative and piecemeal litigation" as a result of the pending litigation in Dauphin County.  Lastly, Defendant argues that the counterclaims are not ripe and therefore should be dismissed.

Defendant's first argument, that Pendleton's interests are "remote and speculative," does not warrant dismissal of the counterclaim.  First, the court finds Defendant's argument to be insufficient, as the only declaratory relief apparently challenged by Defendant is Pendleton's claims regarding the expiration date of the Escrow Agreement and Pendleton's entitlement to a time extension under the Force Majeure clause.  Defendant goes on to conclude, without further substantive argument, that these claims are "entirely conclusory and improper" and are remote and speculative "on [their] face."  (Doc. 40 at 12 of 17.)  The court can not independently discern precisely how these claims are conclusory, remote and speculative.  Pendleton argues that its interests are "direct, substantial and present" because without this relief, it could face a permanent violation of its right to claim against the escrow account for charges that should fall within the scope of the Agreement.  (Doc. 44 at 12 of 16.)  Viewing the facts in the light most favorable to Pendleton, the court will decline to dismiss on this basis.

Second, Defendant relies on *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942), to argue that this court should decline jurisdiction over the counterclaim for declaratory relief as a result of the pendency of the Dauphin County litigation.  In *Brillhart*, the Court stated "Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by

federal law, between the same parties." 316 U.S. at 495.  Here again, Defendant's argument falls short.  First, the parties in the Dauphin County case are not the same as the parties here.  In that case, Plaintiff, Enginuity, brought an action for breach of contract (Count I), violation of the Pennsylvania Contractor and Subcontractor Payment Act, 73 P.S §§ 501, *et seq.* (Count II), and declaratory judgment (Count III), against Pendleton Defendants.  (Doc. 33, Ex. A, Dauphin Cnty. Compl.)  Notably, Enginuity is not a party to this action, and Mr. Vartan and Wells Fargo are not parties to the Dauphin County case.  Further, the issues, while premised on some of the same facts, do not appear to completely overlap.  In the Dauphin County case, the central issue appears to be whether Pendleton owes Enginuity money for work performed, work that Pendleton found to be unsatisfactory.  (*See id.*)  Here, the central issue in the underlying case is whether Wells Fargo's disbursements from the Escrow Account were in accordance with the Escrow Agreement, and the central issue in the counterclaims is whether money owed to replacement contractors should be paid from the escrow account.  Further, Wells Fargo itself admits that any judgment in this action would not resolve the state court litigation.  (Doc. 40 at 13 and 15 of 17.)  Accordingly, the court is not concerned that the declaratory judgment counterclaim is intended to evade or otherwise interfere with pending state litigation and the court will therefore not dismiss Pendleton's counterclaim on this ground.

Lastly, Defendant argues that Pendleton's counterclaim for declaratory relief is not ripe.  The Third Circuit has developed a three-prong analysis to determine ripeness in declaratory judgment actions: "[1] the adversity of the interests of parties, [2] the conclusiveness of the judicial judgment and [3] the practical help,

13

or utility, of that judgment." *Step-Saver Data Sys., Inc. v. Wyse Tech.* 912 F.2d 643, 647 (3d Cir. 1990).

Although Defendant claims that "none" of the factors support a finding of ripeness, Defendant only addresses the last two prongs, stating that the second prong would not be satisfied because a judgment here would not resolve the ongoing state litigation and the third factor cannot be met because "the counterclaims are based on a contingency: the outcome of their lawsuit with Enginuity." (Doc. 40 at 15 of 17.)  Here again, the court does not find sufficient support for this argument in Defendant's brief.  The appropriate inquiry to determine ripeness in terms of the conclusiveness prong is "whether the parties' rights will be definitively decided by a declaratory judgment." *Tait v. City of Phila.,* 410 F. App'x 506, 510 (3d Cir. 2011)(citing *Step-Saver*, 912 F.2d 649 n.9.)  The court has already established that the state litigation involves different parties and different issues, so the inability of a grant of declaratory relief here to resolve issues there is neither surprising nor fatal to the counterclaim.

Defendant, in a footnote, claims that Pendleton's counterclaims are moot as a result of the court's granting of Wells Fargo's motion to deposit the remaining escrow funds in the court's registry (Doc. 42) because Wells Fargo "has no money to disburse for any 'future' payments." (Doc. 40 at 7 of 17, n. 1.)  The court is unmoved by this argument.  As Pendleton points out, Wells Fargo's physical relinquishment of the remaining escrow funds does not dispositively resolve all the issues raised in the counterclaims, which relate not only to Wells Fargo's future conduct, but also to Wells Fargo's past conduct as well as to Wells Fargo's other alleged duties under the agreement (e.g., the approving of replacement contractors).

14

In short, the counterclaims relate to more than the mere doling out of future moneys and thus are not moot.

Lastly, Defendant also requests in a footnote that, in the event that the court finds the counterclaim for declaratory relief to be ripe, this case should be stayed until the pending state court action is resolved.  Pendleton does not address this request for a stay.  The court is not familiar with the status or issues of the Dauphin County litigation beyond those discussed in this memorandum.  As such, the court is not persuaded at this time that a stay would be beneficial.  However, the parties are free to re-raise this issue in the future.

## IV.        Conclusion

For the aforementioned reasons, Defendant Wells Fargo's motion to dismiss Pendleton's amended counterclaims will be denied.

An appropriate order will be issued.

s/Sylvia H. Rambo
United States District Judge

Dated:  April 18, 2012.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **HOVIG RALPH VARTAN, TRUSTEE OF THE HARRISPENN TRUST, a Pennsylvania Trust,** | : | **CIVIL NO. 1:11-CV-1225** |
|       **Plaintiff** | : | |
| | : | |
|       **v.** | : | |
| | : | |
| **WELLS FARGO BANK NORTHWEST, N.A., a National Banking Association,** | : | |
|       **Defendant and Third-Party Plaintiff** | : | |
| | : | |
|       **v.** | : | **Judge Sylvia H. Rambo** |
| **PENDLETON HARRISBURG SPE LLC; SPCK HARRISBURG SPE LLC; WF TWO LLC; and CAMDEN INTERSTATE DRIVE LLC,** | : | |
|       **Third-Party Defendants** | : | |

**O R D E R**

In accordance with the accompanying memorandum, it is **HEREBY ORDERED** that:

1. Defendant's Motion to Dismiss Third-Party Defendants' Amended Counterclaims (Doc. 39) is **DENIED**;

2. Defendant's and Plaintiff's previously filed motions to dismiss (Docs. 27 & 29) are deemed **MOOT**;

3. Defendant's request for a stay of proceedings until the pending Dauphin County litigation is resolved is **DENIED.**

                                       s/Sylvia H. Rambo
                                       United States District Judge

Dated: April 18, 2012.